IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE S. WORKINGER, | : | |
| | : | |
| Plaintiff, | : | No. 1:CV-01-130 |
| | : | |
| v. | : | |
| | : | |
| JOHN E. POTTER[1], | : | Judge Kane |
| Postmaster General | : | |
| | : | |
| Defendant. | : | |

FILED
HARRISBURG, PA
SEP 3 0 2002
MARY E. D'ANDREA, CLERK
Per_____ Deputy Clerk

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

I.   **PLAINTIFF'S ALLEGATIONS**

Plaintiff's claims arise out of his termination from the U.S. Postal Service ("Postal Service" "Defendant") on February 3, 1999. See Amended Complaint, ¶ 2. Plaintiff alleges that he was terminated because of his age and for bumping a parked car. Id. at ¶¶ 2 and 2(1). Plaintiff further alleges that the manner in which he was discharged violated the terms of the National Rural Letter Carrier's Association Collective Bargaining Agreement[2]. Id. at ¶ 2(1). Plaintiff fails to state, however, that the union breached its duty of fair representation as required under 39 U.S.C. § 1208(b). A truthful allegation of this type would be impossible for Plaintiff to make as Plaintiff never possessed such contract rights under the agreement.

---

1   On June 4, 2001, John E. Potter replaced William J. Henderson as the Postmaster General of the United States. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the caption has been altered to reflect the automatic substitution of the defendant.

2   Allegations 1 & 2 of Plaintiff's Amended Complaint were previously addressed and briefed in Defendant United States of America's Brief in Support of It's Motion To Dismiss. The allegations contained in Plaintiff's initial and amended pro se complaints were subsequently defined by the Court in its September 12, 2002 Order and the parties permitted to supplement their briefs to address the alleged violation of the collective bargaining agreement.

II.   **ARGUMENT**

   A.   **Plaintiff Failed To Allege That He Filed a Grievance or That His Union Breached a Duty of Fair Representation**

The United States is immune from suit except to the extent that Congress has, by statute, expressly consented to waive sovereign immunity. United States v. Mitchell, 455 U.S. 535, 538 (1980). The Supreme Court has emphasized that any waiver of sovereign immunity "must be strictly construed in favor of the United States." Ardestani v. I.N.S, 502 U.S. 129, 130 (1976). In this instance, the only federal statute that provides for jurisdiction over the Postal Service for employment-related contract claims is 39 U.S.C. § 1208(b).[3] That statute permits suits against the Postal Service based on contracts with labor unions to be brought in federal district court. See 39 U.S.C. § 1208(b) ("Suits for violation of contracts between the Postal Service and the labor organizations representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction over the parties without respect to the amount in controversy").

While on its face, 39 U.S.C. § 1208(b) provides district court jurisdiction for suits only between the Postal Service and labor organizations or between labor organizations, the Supreme Court has held with respect to a similar federal statute, § 301(a) of the Labor Management Relations Act, codified at 29 U.S.C. § 185, that individual employees have standing to sue under such statutes. Sims v. Local 308 Mailhandling, Civ. A. No. 93-6814, 1994 WL 268252 *2 (E.D. Pa. June 15, 1994). Because § 1208(b) is analogous to § 301(a), case law developed under

---

[3]   Plaintiff cannot bring an action against the Postal Service for breach of employment contract. Postal employees are appointed, not hired, therefore, they do not have employment contracts with the Postal Service. See Sims v. Local 308 Mailhandling, Civ. A. No. 93-6814, 1994 WL 268252 *4 (E.D. Pa. June 15, 1994); Reeder v. Frank, 813 F. Supp. 773, 778-79 (D. Utah 1992).

§ 301(a) for private sector employees is equally applicable to actions brought by employees of the Postal Service under § 1208(b).  See, e.g., Bacashihua v. United States Postal Service, 859 F.2d 402, 405 (6th Cir.1988); Trent v. Bolger, 837 F.2d 657, 659 (4th Cir.1988).

Assuming the Court treats Plaintiff's breach of contract claim as though brought under § 1208(b), Plaintiff fails to state a claim upon which relief may be granted as Plaintiff has not met a necessary requirement for suits against the Postal Service for breach of a collective bargaining agreement.  Plaintiff has failed to allege that he pursued a grievance against the Postal Service under the terms of his collective bargaining agreement and that the union breached its duty of fair representation.  Such allegations (and ultimately showings of proof) are necessary for Plaintiff to pursue his breach of contract claim against the Postal Service.

In DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983), the Supreme Court held that to sue either the employer or the union or both under the collective bargaining agreement, the Plaintiff-employee must prove the same case, i.e., that the union breached its duty of fair representation *and* that the employer breached the collective bargaining agreement.  462 U.S. at 163-65.  The Supreme Court's rationale was as follows:

> It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement.  Ordinarily, however, an employee is required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement.  Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement. [We have] recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation.  In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding.  Such a suit, as a formal matter, comprises two causes of action. . . .  Yet the two claims are inextricably

> interdependent. *'To prevail against either the company or the Union, . . . [Plaintiff-employees] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'"* (Citations omitted). *The employee may if he chooses sue one defendant and not the other, but the case he must prove is the same whether he sues one, the other, or both.*

Id. at 164-65 (internal citations omitted) (emphasis added). These claims are generally referred to as "hybrid" claims: if the employee's claim fails against either the union or the employer, the claim fails against both. Id. at 165.

In this case, Plaintiff has made no allegation that his union breached a duty of fair representation. In fact, Plaintiff makes no allegation that he pursued his remedies under the collective bargaining agreement. Plaintiff simply asserts that "personnel action was not exercised within the time allotment specified by USPS regulations nor by collective bargaining agreements as mandated by the National Rural Letter Carriers' Association." See Amended Complaint at ¶ 2. In the absence of allegations that he brought a grievance and the union failed to fairly represent him, Plaintiff's breach of contract claim must be dismissed. See Vosch v. Werner Continental, Inc., 734 F.2d 149, 154 (3d Cir. 1984), cert. denied, 469 U.S. 1108 (1985) (Plaintiff-employees failed to state a cause of action under § 301 of the Labor Management Relations Act because they did not "challenge the fairness or adequacy of their union's representation in the arbitration procedure, nor do they impugn the integrity of the arbitration process"); Morales v. The P.F. Laboratories, Inc., No. CIV. A. 00-150, 2000 WL 33678049 *3 (D.N.J. Aug. 3, 2000) (because Plaintiff's Amended Complaint failed to allege that union's conduct in handling arbitration was arbitrary, discriminatory or carried out in bad faith, Complaint was dismissed for failure to state a claim for which relief could be granted); Ruffin v. United States Postal Service, Civ. A. No. 92-0685, 1992 WL 437504 *3 (E.D. Pa. Nov. 3, 1992)

(Plaintiff-employee must allege that union failed to provide adequate representation).

### 1. *Plaintiff Cannot Allege Inadequate Union Representation As Plaintiff Was Never Entitled to Contract Rights Under The Agreement*

Plaintiff was a probationary Rural Carrier Associate employee at the time of his termination in February, 1999. See Separation During Probationary Period attached hereto as Exhibit A. Plaintiff's position was governed by the National Rural Letter Carriers' Association Collective Bargaining Agreement for that time period. See The Extension To The Agreement between United States Postal Service and National Rural Letter Carriers' Association, 1995-1999 attached hereto as Exhibit B. The probationary period for Rural Carrier Associates was 90 days or one year, whichever came first. See Exhibit B, pg 74 at ¶B1. With the exception of the probationary period for Rural Carrier Associates, all other applicable provisions of Article 12, Section 1 applied. Id.

Plaintiff's probationary period was one year. Plaintiff's one year probationary period had not expired at the time of his termination. See Notification of Personnel Action, PS Form 50 at line 38 attached hereto as Exhibit C. According to the collective bargaining agreement, probationary employees can be terminated from employment at any time during the probationary period without the right to grieve such dismissal. Article 12, Section 1A. expressly states: "The employer shall have the right to separate from its employ any probationary employee at any time during the probationary period, and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." See Exhibit B, pg 37, Section 1A. Thus, the reason Plaintiff never filed a grievance nor claimed inadequate union representation is because Plaintiff never had standing to grieve his termination in the first place. Accordingly, Plaintiff

-5-

will never be able to meet the § 1208(b) standard that is required in an employment breach of contract claim against the Postal Service. Plaintiff's claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be granted.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

JOSEPH J. TERZ
Assistant United States Attorney
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108-1754
(717) 221-4482

Of Counsel:
Donna G. Marshall
Attorney, Law Department
Philadelphia Field Office
United States Postal Service
P.O. Box 40595
Philadelphia, PA 19197-0595
(215) 931-5090





February 1, 1999

GEORGE S WORKINGER
RURAL CARRIER ASSOCIATE
SS#: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

SUBJECT: SEPARATION DURING PROBATIONARY PERIOD

This is official notice that you will be separated from the Postal Service effective with the close of business February 3, 1999

This separation action is being taken for the following reason(s):

- *Failure to report an accident*     On December 12, 1998 you were involved in a preventable motor vehicle accident. You left the accident without notifying the owner of the other vehicle and did not report it to Management.
-
Your actions are unacceptable and will not be tolerated by Management, therefore, your separation is warranted.

All government property such as the identification badge and locker key must be returned before any money due you will be paid.

_____     2-1-99
KATHY LANDIS                         DATE
OIC, ETTERS

CC: Personnel
    Labor Relations
    Finance
    File

GOVERNMENT
EXHIBIT
A




# THE EXTENSION TO THE AGREEMENT

between
United States Postal Service
and
National Rural Letter Carriers' Association

**1995-1999**



GOVERNMENT EXHIBIT B

Article 12.2.B.1.a

# ARTICLE 12
# PRINCIPLES OF SENIORITY, POSTING, AND REASSIGNMENT

## Section 1. Probationary Period

### A. Statement of Principle

The probationary period for a new employee appointed as a regular rural carrier shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period, and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

### B. Falsification of Employment Application

The parties recognize that the failure of the Employer to discover a falsification by an employee in the employment application prior to the expiration of the probationary period shall not bar the use of such falsification as a reason for discharge.

### C. Completion of Probationary Period

When an employee completes the probationary period, the employee's seniority will be accrued in accordance with Article 12, Section 2.

### D. Reemployment

When an employee who is separated from the Postal Service for any reason is rehired, the employee shall serve a new probationary period. If the separation was due to disability, the employee's seniority shall be established in accordance with Section 2, if applicable.

## Section 2. Rural Carrier Seniority

In addition to the provisions listed below, rural carriers are covered by the seniority provisions in Section l007 of the Postal Reorganization Act, which are intended to prevail.

### A. Accruing Seniority

Rural carrier seniority begins to accrue with appointment as a regular rural carrier and continues to accrue while service is uninterrupted in the same post office.

### B. Breaking Ties

#### 1. Regular Rural Carriers

   a. When two (2) or more regular rural carriers are appointed from a register of eligibles on the same date, seniority is determined according to standing on the register.

P. **Other Route Assignments**

   A regular rural carrier shall not be required to serve all or part of any rural route other than his or her assigned route except as provided in ELM, Section 546.

Section 2.   Special Provisions for Part-time Flexible Rural Carriers, Substitutes, Rural Carrier Associates, Rural Carrier Relief Employees, and Auxiliary Rural Carriers

A. Appointment

   1.   Rural carrier associates (RCAs) are selected by the Employer from a register of eligibles established as the result of an open competitive examination, except that the Employer may appoint a former regular carrier in accordance with the Memorandum on page **96**. RCAs shall be appointed only to fill leave replacement vacancies on regular routes **or auxiliary routes as defined in Article 30.2.F.1. In addition, a part-time flexible rural carrier may be appointed as an RCA provided there is a leave replacement vacancy in the office in which the part-time flexible rural carrier seeks appointment. The part-time flexible rural carrier must resign his or her career position at least six (6) days prior to the effective date of the RCA appointment.**

   2.   The Employer shall make every effort to expeditiously fill leave replacement vacancies when they occur. Regular rural carriers shall have the right to require that **a leave replacement** be **assigned to** their route.

   3.   **The establishment of a part-time flexible rural carrier assignment is at the discretion of the Employer. There is no requirement to establish such assignments.**

        If the Employer decides to establish a part-time flexible rural carrier assignment, it shall be posted at the post office, including stations and branches, for all substitute rural carriers and RCAs that have completed their probationary period. The notice shall state that a part-time flexible rural carrier can not decline conversion to regular status. The notice shall be posted for ten (10) calendar days.

        a.   The assignment will be awarded to the substitute rural carrier applicant having accrued the longest period of continuous service as a substitute rural carrier and auxiliary rural carrier in that office, unless another substitute rural carrier is deemed to be substantially better qualified. Such continuous service is that which occurred immediately prior to the appointment.

        b.   **If the vacant part-time flexible rural carrier assignment still exists, it shall be awarded to the non-probationary RCA applicant having accrued the longest period of continuous service as an RCA in that office, unless another RCA is deemed to be substantially better qualified.**

Article 30.2.A.3.c

    c. The posted assignment shall be awarded within ten (10) days. The employee shall be placed in the new assignment within twenty-one (21) days of being designated the successful bidder.

    d. If the vacant part-time flexible assignment still exists, post the vacancy with in ten (10) days for all substitutes and non-probationary RCAs within the district. The notice shall be posted for fifteen (15) days at each office within the district. Bids may only be withdrawn during the 15 day posting period.

    e. The order of consideration shall be the same as stated in subsections a. and b. above and awarding the assignment shall be the same as stated in subsection c. above.

**B. Probationary Period**

1. The probationary period for a rural carrier associate shall be 90 days actually worked or one calendar year, whichever comes first. All other applicable provisions of Article 12, Section 1, shall apply.

2. A change from rural carrier associate to regular rural carrier shall not interrupt or otherwise change the running of the time counted toward completion of the probationary period.

3. **A change from substitute or rural carrier associate to part-time flexible rural carrier shall not require a new probationary period.**

4. A change from substitute, rural carrier associate, or **part-time flexible rural carrier** to regular rural carrier shall not require a new probationary period.

**C. Assignment to or Utilization on More Than One Regular Route**

1. Part-time flexible rural carriers may be assigned as the primary leave replacement on more than one regular route. The part-time flexible may also be utilized on any regular route where the primary leave replacement is not available and any auxiliary route where the assigned leave replacement is not available.

2. When necessary or desirable, a substitute, rural carrier associate, or rural carrier relief employee who is assigned to one route may be utilized on up to three routes. However, the employee's prime responsibility is to the assigned route.

3. Not more than one **part-time flexible rural carrier,** substitute, rural carrier associate, or rural carrier relief employee will be assigned for each regular rural route.

4. When a regular rural carrier is on extended leave without pay for National Rural Letter Carriers' Association official business, the person serving the route of such a rural carrier shall be entitled to a leave replacement.

990001-6466

# NOTIFICATION of PERSONNEL ACTION
## U. S. Postal Service

| # | Field | Value | # | Field | Value |
|---|---|---|---|---|---|
| 01 | Effective Date | 02-03-1999 | 02 | Social Security Number | 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 |

### EMPLOYEE INFORMATION

| # | Field | Value |
|---|---|---|
| 03 | Employee Name-Last | WORKINGER |
| 04 | Employee Name-First | GEORGE |
| 05 | Employee Name-Middle | S |
| 06 | Mailing Address Street/Box/Apts | 1170 VALLEY GREEN RD |
| 07 | Mailing Address-City | ETTERS |
| 08 | Mailing Address-State | PA |
| 09 | Mailing Address-Zip+4 | 17319-9490 |
| 10 | Date of Birth | 07-06-1950 |
| 11 | Veterans Preference | 1 - NO PREFERENCE |
| 12 | Sex | |
| 13 | Minority | |
| 14 | Disability | |
| 15 | Leave Comp Date | |
| 16 | Enter on Duty Date | 07-18-1998 |
| 17 | Retirement- Comp Date | |
| 18 | Serv Anniversary PPYR | |
| 19 | TSP Eligibility | I - INELIGIBLE |
| 20 | TSP Service Comp Date | |
| 21 | Prior CSRS Service | |
| 22 | Frozen Csrs Time | |
| 23 | Leave Data-Category | 0 - INELIGIBLE |
| 24 | Leave Data-Chg PPYR | |
| 25 | Leave Data-Type | 3 - INELIGIBLE FOR LEAVE |
| 26 | Credit Military Serv | |
| 27 | Retired Military | |
| 28 | Retirement Plan | 2 - FICA |
| 29 | Employee Status | |
| 30 | Life Insurance | A0 - Ineligible |
| 31 | Special Benefits | |

### POSITION INFORMATION

| # | Field | Value |
|---|---|---|
| 32 | Employ Office-Fin No | 41-2572 |
| 33 | Employ Office-Name | ETTERS POST OFFICE |
| 34 | Employ Office-Address | ETTERS PA 17319-9998 |
| 35 | Duty Station-Fin No | 41-2572 |
| 36 | Duty-Station-Name | ETTERS POST OFFICE |
| 37 | Appt Expiration Date | |
| 38 | Probation Expir Date | 07-17-1999 |

| # | Field | Value |
|---|---|---|
| 39 | FLSA Status | N - NON-EXEMPT |
| 40 | Pay Location | 000 |
| 41 | Rural Carrier-Route | 005 |
| 42 | Rural Carr-L-Rte ID | L |
| 43 | Rural Carr-Pay Type | K - 5 DAY HEAVY ROUTE |
| 44 | Rural Carr-Tri-Weekly | |
| 45 | Rural Carr-FLSA | P |
| 46 | Rural Carr-Commit | |
| 47 | Rural Carr-EMA | |
| 48 | Rural Carr-Hours | 44 |
| 49 | Rural Carr-Miles | 022 |
| 50 | Job Sequence | 1 |
| 51 | Occupation Code | 2325-07XX |
| 52 | Position Title | RU CAR ASC/SV RG RT |
| 53 | Functional Oper Nbr | 2500 |
| 54 | Designation/Activity | 78/0 |
| 55 | Position Type | 6 - RURAL |
| 56 | Limit Hours | |
| 57 | Allowance Code | |
| 58 | Employment Type | |

### SALARY INFORMATION

| # | Field | Value |
|---|---|---|
| 59 | Pay Rate Code | H - HOURLY |
| 60 | Rate Schedule Code | B - RURAL |
| 61 | Grade/Step | 05/ Y |
| 62 | Base Salary | 11.70 |
| 63 | Cola | |
| 64 | Cola Roll-In Ind | |
| 65 | Next Step PPYR | |
| 66 | Merit Anniv Date | |
| 67 | Merit Lump Sum | |
| 68 | Special Salary Code | |
| 69 | Protected RSC | |
| 70 | Protected Grade/Step | |
| 71 | Expiration PP/YR | |
| 72 | Protected RC Hours | |
| 73 | Protected RC Miles | |
| 74 | RC Guaranteed Salary | |
| 75 | Annuity Amount | |
| 76 | Red Circle Code | 0 |

### NATURE OF PERSONNEL ACTION

| # | Field | Value | # | Field | Value |
|---|---|---|---|---|---|
| 77 | Nature of Action Code | 329 | 78 | Authority | 39-USC SECT. 1001 |
| 79 | Description | TERMINATION DURING PROBATION | 80 | Code | 522 |
| | | | 81 | Code | 521 |
| | | | 82 | Code | |
| | | | 83 | Code | 671 |

**84 Remarks**
LAST DAY IN PAY STATUS 02-03-1999
SF-8 ISSUED 02-05-1999
LGG 020499

| # | Field | Value |
|---|---|---|
| 85 | Authorization | PATRICK R. DONAHOE, VP AREA OPERATIONS-ALLEGHENY AREA |
| 86 | Processed Date | 02-04-1999 |
| 87 | Personnel Office ID | TD45 |
| 88 | OPF Location | ETTERS POST OFFICE |

PS Form 50, March 1990 (Exception to Standard Form 50)   2 - OPF COPY

GOVERNMENT EXHIBIT C

TAM:JJT:nz

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE S. WORKINGER,          :
                              :
        Plaintiff,             :
                              :  NO. 1:01-CV-130
    v.                        :
                              :
JOHN E. POTTER, POSTMASTER    :  (KANE, J.)
GENERAL, U.S. POSTAL          :
SERVICE, ALLEGHENY AREA,      :
                              :
        Defendant.            :

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 30th day of September, 2002, she served a copy of the attached

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

        George S. Workinger, Pro Se
        1170 Valley Green Road
        Etters, Pennsylvania  17319

                                        Naomi Zimmerman
                                        Legal Assistant

N:\NZimmerman\terz\docs\workinger brief in support.wpd